SHARTSIS FRIESE LLP
ANTHONY B. LEUIN (Bar #95639)
FELICIA A. DRAPER (Bar #242668)
One Maritime Plaza, Eighteenth Floor
San Francisco, CA 94111-3598
Telephone:  (415) 421-6500
Facsimile:  (415) 421-2922
Email: aleuin@sflaw.com
Email: fdraper@sflaw.com

Attorneys for Plaintiffs

**ENDORSED**

SEP. 09 2021

Clerk of the Napa Superior Court
By: _____L. WALKER_____
        Deputy

**DELAY REDUCTION CASE**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF NAPA

| | |
|---|---|
| FAIRWINDS ESTATE WINERY, LLC, and FAIRWINDS ESTATE, LLC. <br><br> Plaintiffs, <br><br> v. <br><br> KINSALE INSURANCE COMPANY; MALLOY IMRIE & VASCONI INSURANCE SERVICES, LLC; CRC INSURANCE SERVICES; CRC COMMERCIAL SOLUTIONS; and DOES 1 through 10, <br><br> Defendants. | Case No. **21CV001288** <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> CASE MANAGEMENT CONFERENCE <br> DATE: 2-16-2022 <br> TIME: 8:30am <br> PLACE: Courtroom A <br> 825 Brown Street, Napa CA 94559 |

Case No.
Case Number

COMPLAINT

Plaintiffs Fairwinds Estate Winery, LLC and Fairwinds Estate, LLC (collectively, "Fairwinds"), for their Complaint for Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Declaratory Relief, Concealment, Unfair Competition, Reformation, and Professional Negligence, allege as follows:

## INTRODUCTION AND SUMMARY

1. Plaintiffs Fairwinds Estate Winery, LLC and Fairwinds Estate, LLC (collectively, "Fairwinds") have at all times since 2015 owned and operated, respectively, the real property located at 4550 Silverado Trail North in Calistoga, California and the winery operation doing business thereon ("the Winery"). First founded over a half century ago, the Winery conducted business for decades under the name Cuvaison. In April 2015, current ownership acquired the Winery and introduced Fairwinds Estate Winery to the Napa Valley. Fairwinds is known in particular for its elegant Cabernets, well-balanced Chardonnays, as well as other unique varietals such as Malbec and Petit Verdot.

2. Under current ownership, Fairwinds has successfully combined the challenges of making highest quality wines which appeal to the discriminating oenophile, and maintaining a sustainable and well-run business operation.

3. Consistent with its sound business operation, Fairwinds has at all times sought to maintain property insurance with limits adequate to protect the enterprise in case of a covered loss, such as loss by fire. By way of example, for the period from May 1, 2020 through May 1, 2021, Fairwinds initially procured a primary commercial property insurance policy providing a coverage limit of $8,310,000 per occurrence.

4. In July 2020, Fairwinds' lender requested an increase in Fairwinds' coverage limits. When Fairwinds' primary insurer, Beazley Insurance Services ("Beazley") declined to increase the limits of the then-current primary policy (the "Underlying Policy," defined *infra*), Fairwinds through its brokers promptly acquired from Defendant Kinsale Insurance Company ("Kinsale") an excess commercial property insurance policy (the "Excess Policy," defined *infra*) providing additional limits of $2,060,831 coverage per occurrence in excess of the Underlying Policy's $8,310,000 policy limit, thus providing Fairwinds coverage up to $10,370,831 per

- 1 -

occurrence.

5. Fairwinds was destroyed by the devastating Glass Fire in September 2020. Fairwinds' loss exceeds the $10,370,831 combined limits of the Underlying Policy and the Kinsale Excess Policy.

6. Fairwinds' primary insurer has paid the limits on Fairwinds' primary insurance policy such that the primary policy is now exhausted and the Kinsale Excess Policy is triggered. Nonetheless, Kinsale has refused and refuses to pay all or any portion of its Excess Policy. Fairwinds paid significant premiums to assure that its insurance limits were adequate. It specifically communicated to its brokers the request to increase its policy limits to $10,370,831. Kinsale offered "blanket" coverage on a "per occurrence" basis in excess of the primary limits; Fairwinds accepted the quoted offer and paid the premium; and Kinsale must honor its promise.

7. Rather than honor its promises to Plaintiffs in their time of need, Kinsale now seeks only to delay and "dodge" its obligations. In complete derogation of the rule that limits on insurance coverage must be "conspicuous, plain, and clear," Kinsale now asserts that a "Statement of Values" imposed sub-limits on Fairwinds' insured property. Such interpretation is plainly unreasonable and unenforceable, and cannot be advanced in good faith, least of all where concealed from the policyholder at the time of purchase, where it would render the increased coverage illusory, and where inconsistent with the offering of "blanket" coverage with limits of $10,370,831.

8. Fairwinds is confident that the courts of this state will reject Kinsale's argument that reference to a "Statement of Values" can surreptitiously impose sub-limits on coverage provided to a policyholder. However, if California law were to allow and approve such practice, Fairwinds' brokers would be responsible, as set forth below, for their failure to procure the excess coverage requested by Fairwinds, and for failure to identify Kinsale's purported stealth imposition of sub-limits on various coverages.

//

//

//

# THE PARTIES

9. Plaintiff Fairwinds Estate Winery, LLC is now, and at all relevant times was, a limited liability company duly organized under the laws of the State of Nevada, with its principal place of business in Calistoga, Napa County, California. Fairwinds Estate Winery is the owner of the real property on which the Winery conducts its business, and is an Insured under the insurance policy which is the subject of this action.

10. Plaintiff Fairwinds Estate, LLC is now, and at all relevant times was, a limited liability company duly organized under the laws of the State of Nevada, with its principal place of business in Calistoga, Napa County, California. Fairwinds Estate, LLC has at all times since April 2015 owned and operated the Winery. Fairwinds Estate Winery and Fairwinds Estate are affiliated in that they share a common managing member, Fairwinds Holdings, LLC. Fairwinds Holdings, LLC is a limited liability company organized under the laws of the State of Nevada, comprised of numerous members resident in the State of California.

11. Fairwinds is informed and believes, and on that basis alleges, that defendant Kinsale is now, and at all relevant times was, a corporation duly organized under the laws of the State of Arkansas, with principal place of business in the State of Virginia. At all times relevant hereto, Kinsale was an eligible "surplus lines" insurance company authorized to conduct business and conducting business in the State of California. Kinsale issued to Fairwinds the excess commercial property policy that is the subject of this dispute.

12. Fairwinds is informed and believes, and on that basis alleges, that defendant Malloy Imrie & Vasconi Insurance Services, LLC (the "Broker") is now, and at all relevant times was, a limited liability company duly organized under the laws of the State of California, with principal place of business in Napa, California. Fairwinds is informed and believes, and on that basis alleges, that Broker is comprised of numerous members who reside in Napa County, California.

13. Fairwinds is informed and believes, and on that basis alleges, that defendant CRC Insurance Services ("CRC Services") is now, and at all relevant times was, a corporation duly organized under the laws of the State of Alabama, with its principal place of business in the State

of Alabama.

14. Fairwinds is informed and believes, and on that basis alleges, that defendant CRC Commercial Solutions ("CRC Solutions") is a business, of form unknown to Plaintiffs, owned by, affiliated with, or otherwise an agent of acting in concert with CRC Services. CRC Services and CRC Solutions are sometimes hereafter referred to collectively as "the Producer."

15. Fairwinds does not know the true names and capacities of fictitiously named defendants sued herein as Does 1 through 10 (the "Doe Defendants"), and on that basis sues them by their fictitious names. When Fairwinds ascertains the true names and capacities of the Doe Defendants, Fairwinds will amend this Complaint accordingly.

16. Fairwinds is informed and believes, and upon that basis alleges, that the Doe Defendants, and each of them, took some part in the acts and conduct complained of herein, and/or breached obligations to Fairwinds described herein, and as a direct and proximate result of said acts, omissions, and breaches, incurred liability to Fairwinds for the relief sued for herein.

17. Fairwinds is informed and believes, and upon that basis alleges, that each of the Defendants, in performing the acts complained of, was acting as the agent for one or more of the other Defendants, as well as himself, herself, or itself, and acted within the scope of that agency.

**JURISDICTION AND VENUE**

18. This Court has subject matter jurisdiction over this action and personal jurisdiction over the Defendants, and each of them.

19. Venue is proper in this Court in that the Broker maintains its principal place of business in Napa County, California; the insurance policy which is the subject of this action was negotiated, made, and to be performed in Napa County, California; and the tortious acts and omissions complained of herein occurred, in whole or in part, in Napa County, California.

20. Fairwinds purchased the subject insurance policy, the Excess Policy, in California through the Broker in Napa County, California. The Excess Policy insured Fairwinds, a Napa County-based business, against the risk of loss of Fairwinds' property at its location in Napa County. The relevant policy was to be performed in California, and is subject to and governed by the laws of the State of California.

- 4 -

Case No.
CaseNumber

COMPLAINT

# GENERAL ALLEGATIONS

21. Fairwinds owns, and until it suffered consequences of a devastating wildfire in September 2020 operated, the Winery.

22. The Winery is comprised of, among other things: an approximately 17,255 square foot, Mediterranean-style masonry building that contains a tank and barrel storage room, bottling line, offices, and other facilities (the "Main Building"); an approximately 4,125 square foot, metal building that contains fermentation and storage tanks (the "Tank Building"); an approximately 22,000 square foot underground cave system for barrel storage and hospitality activities (the "Cave"); and an approximately 1,300 square foot tasting room (the "Tasting Room").

23. On or about September 27, 2020, the wildfire later dubbed the Glass Fire ignited in the vicinity of Napa and Sonoma Counties, California. Within days, the Glass Fire had consumed a large portion of the Winery, causing significant damage. Among other things, the Main Building and Tasting Room were total losses and the Cave, Tank Building, landscaping, roadways, walkways, irrigation equipment, and other items suffered significant additional damages.

24. Fairwinds was insured for the above losses by two separate insurance policies. First, Fairwinds was insured by a primary commercial property insurance policy (the "Underlying Policy") issued by Beazley Insurance Services ("Beazley"). The Underlying Policy, Policy No. W26FBF200201, effective May 1, 2020 through May 1, 2021, was issued to named insureds Fairwinds Estate Winery, LLC and Fairwinds Estate, LLC. Fairwinds obtained the Underlying Policy through the services of the Broker.

25. The Underlying Policy offered coverage for buildings, personal property, and equipment at certain locations, up to a coverage limit of $8,310,000 per occurrence.

26. The second of Fairwinds' policies was an excess property insurance policy issued by Defendant Kinsale (the "Excess Policy"). The Excess Policy, Policy No. 0100122758-0, effective August 1, 2020 through May 1, 2021, was also issued to named insureds Fairwinds Estate Winery, LLC and Fairwinds Estate, LLC.

//

- 5 -

Case No.
CaseNumber

COMPLAINT

27. The Excess Policy is specifically in excess to the Underlying Policy and provides additional coverage in excess of $8,310,000 up to an additional $2,060,831 per occurrence.

28. In July 2020, in connection with a lender's requirement for financing, Fairwinds contacted the Broker seeking quotes for additional insurance to increase the blanket coverage limits on its property.

29. The Broker contacted Beazley to request an increase on the then-current coverage provided under the Underlying Policy. Beazley declined the Broker's request.

30. The Broker then obtained an excess property insurance quote from Kinsale, for $2,060,831 coverage in excess of the Underlying Policy's $8,310,000 policy limit. The quote, presented to the Producer, and provided to Fairwinds by the Broker, stated the proposed policy's "Limits" of "$2,060,831 x/s $8,310,000 Per Occurrence," and stated the "Total Insured Values" of "$10,370,831." The quote contained no mention that the coverage would be limited by any individually stated value for the Winery.

31. Fairwinds promptly reported a claim to Beazley on the Underlying Policy for damages to covered property caused by the Glass Fire.

32. Beazley ultimately paid Fairwinds the Underlying Policy's policy limit of $8,310,000.

33. In or about September 2020, Fairwinds, through the Broker, submitted a claim to Kinsale on the Excess Policy for damages to covered property caused by the Glass Fire.

34. In or about July 2021, after months of delay and refusal to commit, Kinsale denied coverage under the Excess Policy. Kinsale argued that the Excess Policy was subject to limitations for individual categories of property identified in a "Statement of Values." Kinsale argued that the Statement of Values limits the value of the Main Building and Tasting Room to $4,505,893; that Beazley already paid an amount above that total value under the Underlying Policy; and that the Excess Policy is not implicated and there is no coverage.

//
//
//

35. Fairwinds vigorously disputes that contention, as it renders coverage under the Excess Policy illusory. Under Kinsale's interpretation, Fairwinds could never suffer loss sufficient to trigger coverage under the Excess Policy. For example, the Statement of Values lists the total value of the Main Building, Tank Building, and Tasting Room as $3,232,831;[1] the total value of Business Personal Property ("BPP") as $2,810,000; and the total value of Outside Equipment as $500,000—for a grand total of $6,542,831. Thus, even if Fairwinds lost every single piece of this property in a wildfire, because the Underlying Policy's coverage limit is greater than that amount (at $8,310,000), coverage under the Excess Policy would not be triggered.

36. As a result of Kinsale's frivolous contention that it offered "blanket" limits but surreptitiously imposed lower, sub-limits which rendered illusory the excess coverage on Fairwind' important assets, Fairwinds is forced to pursue its remedies at law and in equity.

37. At all times relevant hereto, Fairwinds performed all of its obligations under and satisfied all conditions set forth in the Underlying Policy and the Excess Policy.

**FIRST CAUSE OF ACTION**
**(Against Kinsale for Breach of Contract)**

38. Paragraphs 1 through 37 are incorporated by reference as though fully set forth herein.

39. Fairwinds and Kinsale entered into a contract in the form of the Excess Policy.

40. Fairwinds has performed the material obligations of the Underlying Policy and the Excess Policy on its part to be performed, including payment to Kinsale of substantial insurance premiums.

41. All conditions required by the Excess Policy for Kinsale's performance have been satisfied.

42. Kinsale has breached, and continues to breach, the Excess Policy it issued by, *inter alia* and without limitation, depriving, or attempting to deprive, Fairwinds of its right to coverage

---

[1] Inclusive of the Caves, individually valued at $3,828,000, the total value is listed as $7,060,831. However, the Caves are an underground structure that could not be destroyed in a wildfire.

- 7 -

Case No.   COMPLAINT
CaseNumber

pursuant to California law.

43. As a direct and proximate result of the breach by Kinsale, Fairwinds has been damaged in the amount of no less than $2,060,831, exclusive of additional damages, prejudgment interest, and attorneys' fees Fairwinds has been forced to incur. Fairwinds will amend this pleading when its damages are ascertained, or according to proof.

Wherefore Fairwinds prays for judgment as set forth below.

## SECOND CAUSE OF ACTION
**(Against Kinsale for Breach of the Implied Covenant of Good Faith and Fair Dealing)**

44. Paragraphs 1 through 43 are incorporated by reference as though fully set forth herein.

45. Implied by law in the Excess Policy is a covenant of good faith and fair dealing, which requires that Kinsale exercise its rights responsibly and in a manner so as to avoid injury to Fairwinds. This covenant requires that Kinsale refrain from conscious, deliberate, and/or reckless acts which frustrate the purpose of the Excess Policy it issued, or which deny Fairwinds the benefits of the Excess Policy.

46. Kinsale has breached the implied covenant of good faith and fair dealing in that the actions and contentions set forth above were and are designed to place Kinsale's interests ahead of Fairwinds' interests, to deny Fairwinds the benefit of the insurance purchased by Fairwinds, and to deny Fairwinds its reasonable expectations in procuring the Excess Policy.

47. As a result of Kinsale's breaches of the implied covenant of good faith and fair dealing, Fairwinds has suffered damage as set forth herein, has been forced to retain counsel, and has incurred and continues to incur attorneys' fees in order to obtain the benefits provided by the Excess Policy.

48. Fairwinds is informed and believes, and on that basis alleges, that in breaching the implied covenant of good faith and fair dealing, Kinsale acted with malice, fraud, and oppression and conscious disregard of Fairwinds' rights, thereby entitling Fairwinds to an award of exemplary damages permitted by applicable statutory, decisional, and constitutional law.

Wherefore Fairwinds prays for judgment as set forth below.

**THIRD CAUSE OF ACTION**
**(Against Kinsale for Declaratory Relief)**

49. Paragraphs 1 through 48 are incorporated by reference as though fully set forth herein.

50. Kinsale is obligated to reimburse Fairwinds for its damages incurred in connection with the Glass Fire.

51. An actual and present controversy exists between Fairwinds, on the one hand, and Kinsale, on the other hand, as to (a) Fairwinds' rights under the Excess Policy and (b) Kinsale's refusal to acknowledge its obligation to pay Fairwinds the full policy limit of $2,060,831 under the Excess Policy.

52. Fairwinds disputes Kinsale's positions and specifically disputes that Kinsale may in good faith advance the denial of coverage position it has advanced.

53. A judicial declaration of the rights and duties of the parties is necessary to resolve the disputes set forth herein.

Wherefore Fairwinds prays for judgment as set forth below.

**FOURTH CAUSE OF ACTION**
**(Against Kinsale for Concealment)**

54. Paragraphs 1 through 53 are incorporated by reference as though fully set forth herein.

55. Kinsale did not disclose to Fairwinds its contention that the Excess Policy did not provide full blanket coverage in the additional stated amount of $2,060,831—or any additional coverage at all—for Fairwinds' insured property.

56. Kinsale had an obligation to disclose its contention that the Excess Policy did not provide full blanket coverage for Fairwinds' insured property in the additional stated amount of $2,060,831 or bring Fairwinds' total limits to $10,370,831.

57. Fairwinds is informed and believes, and on that basis alleges, that Kinsale deliberately failed to disclose its contention that the Excess Policy did not provide full blanket coverage for Fairwinds' insured property in the additional stated amount of $2,060,831 in order to

induce Fairwinds to purchase the insurance policy Kinsale offered, while secretly retaining the right to deny full coverage.

58. Fairwinds purchased the Excess Policy as a result of its lender's requirement that an additional approximately $2 million in additional coverage be procured for Fairwinds' property, and in reasonable reliance on the representation that the Excess Policy would provide full blanket coverage for Fairwinds' insured property in the amount of $2,060,831 and bring Fairwinds' total limits to $10,370,831.

59. As a direct and proximate result of Kinsale's concealment as set forth above, Fairwinds has been damaged in the amount of no less than $2,060,831. Fairwinds will amend this pleading when its damages are ascertained, or according to proof.

60. Fairwinds is informed and believes, and on that basis alleges, that in concealing its contentions regarding coverage, Kinsale acted with malice, fraud, and oppression and conscious disregard of Fairwinds' rights, thereby entitling Fairwinds to an award of exemplary damages as permitted by applicable statutory, decisional, and constitutional law.

Wherefore Fairwinds prays for judgment as set forth below.

### FIFTH CAUSE OF ACTION
(Against Kinsale for Unfair Competition)

61. Paragraphs 1 through 60 are incorporated by reference as though fully set forth herein.

62. California Business and Professions Code § 17200 *et seq.* prohibits unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising…."

63. Defendants have engaged in unfair competition in violation of § 17200 *et seq.* in that they falsely led Fairwinds to believe that under the Excess Policy, Kinsale would provide full "blanket" coverage for Fairwinds' insured property in the amount of $2,060,831, thereby bringing Fairwinds' coverage limits to $10,370,831.

64. Kinsale has engaged in unfair competition in violation of § 17200 *et seq.* by violating Insurance Code § 332, in that it failed to communicate with Fairwinds in good faith its

- 10 -
Case No.
CaseNumber
COMPLAINT

position that the Excess Policy did not provide "blanket" limits but rather imposed lower sub-limits on the most important assets insured.

65. As a direct and proximate cause of Defendants' actions, Fairwinds has suffered injury in fact and has lost money. Fairwinds has been compelled to expend time, money, and resources pursing Kinsale for coverage under the Excess Policy.

66. Fairwinds is entitled to injunctive relief pursuant to California Business and Professions Code § 17203 to prevent Kinsale's further unfair competition acts against Fairwinds, or against other third parties.

Wherefore Fairwinds prays for judgment as set forth below.

**SIXTH CAUSE OF ACTION**
**(Against Kinsale for Reformation)**

67. Paragraphs 1 through 66 are incorporated by reference as though fully set forth herein.

68. Fairwinds believed and believes that the Excess Policy provides full blanket coverage in the full stated amount of $2,060,831, as set forth above, and that Kinsale breached the contract and acted in bad faith in contending otherwise. Nonetheless, if and to the extent Kinsale proffers a contrary interpretation or seeks an interpretation that the Excess Policy did not provide the Winery full blanket coverage in the stated amount of $2,060,831, the Excess Policy fails to reflect the true intent and bargain relied upon by Fairwinds. Thus, if and to the extent the Excess Policy could ever be construed not to provide the Winery full blanket coverage in the full stated amount of $2,060,831 but, on the contrary, is illusory, the Excess Policy should be reformed to clarify that it does provide such coverage.

69. The above-described failure of the Excess Policy to reflect the true intent and bargain relied upon by Fairwinds resulted from Defendants' false representation to Fairwinds that the Excess Policy did embody the true intent and bargain relied upon by Fairwinds in purchasing the Excess Policy.

70. If Kinsale's interpretation of the Excess Policy were correct, Fairwinds in reliance on Kinsale's false representations was deceived and misled into entering into a contract that

differed materially from the true intent and bargain relied upon by Fairwinds in purchasing the Excess Policy.

Wherefore Fairwinds prays for judgment as set forth below.

## SEVENTH CAUSE OF ACTION
### (Against the Broker and the Producer for Professional Negligence)

71. Paragraphs 1 through 70 are incorporated by reference as though fully set forth herein.

72. Fairwinds is informed and believes, and on that basis alleges, that the Broker and the Producer were well aware of the request from Fairwinds' lender for additional insurance as set forth hereinabove. Fairwinds specifically requested that Broker obtain additional insurance per the lender's specific direction. Fairwinds is informed and believes, and on that basis alleges, that Broker engaged Producer to obtain additional coverage consistent with said request. As a result of the specific requests initiated by Fairwinds, Broker and Producer were charged with the obligation to procure for Fairwinds additional insurance coverage for the Winery sufficient to bring total limits to $10,370,831. In its capacity as Fairwinds' broker, the Broker procured for Fairwinds the Underlying Policy and the Excess Policy, and the Broker has generated significant commission income in so doing.

73. In procuring the Excess Policy, the Broker failed to advise Fairwinds that the Excess Policy might not, or would not, provide full blanket coverage for Fairwinds' insured property in the additional stated amount of $2,060,831 or otherwise bring the Winery's total limits to $10,370,831. As set forth above, Fairwinds believed and believes that the Excess Policy provides full blanket coverage in the full stated amount of $2,060,831, and that Kinsale has acted in bad faith in denying the existence of such coverage. Nonetheless, to the extent (if any) that the Excess Policy does not provide the Winery full blanket coverage in the full stated amount of $2,060,831, the Broker and the Producer acted negligently in facility to procure such coverage, and in failing to advise Fairwinds of the potential lack of such coverage.

74. As a result of the Broker's and the Producers' negligence, Fairwinds is being damaged in that it is incurring attorneys' fees to affirm the scope of coverage on the Excess

Case No.
CaseNumber

COMPLAINT

Policy, and stands to be damaged if the coverage it purchased is not affirmed to provide full blanket coverage in the additional stated amount of $2,060,831 to bring total limits to $10,370,831. Fairwinds will amend this pleading when its damages are ascertained, or according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Fairwinds prays for judgment as follows:

1. For general and special damages according to proof, including without limitation attorneys' fees;

2. For exemplary damages according to proof;

3. For punitive damages;

4. For a declaration of rights and obligations under the Excess Policy;

5. For preliminary and permanent injunctive relief prohibiting Kinsale from denying Fairwinds full blanket coverage in the full stated amount of $2,060,831 under the Policy, and from denying other similarly-situated parties the full blanket coverage amounts of their policies;

6. For reformation of the Excess Policy to reflect Fairwinds' understanding that the Excess Policy provides full blanket coverage in the full stated amount of $2,060,831.

7. For costs of suit;

8. For interest as allowed by law; and

9. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Fairwinds hereby demands trial by jury on all issues so triable.

Dated: September 9, 2021                SHARTSIS FRIESE LLP


                                        By:  */s/ Anthony B. Leuin*
                                             ANTHONY B. LEUIN

                                        Attorneys for Plaintiffs

9036430

- 13 -
Case No.                           COMPLAINT
CaseNumber